**SIGNED THIS: October 12, 2006**

_____
**THOMAS L. PERKINS**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**
_____

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CASEY A. BARNICK,** | ) | No. 05-87086 |
| Debtor. | ) | |
| _____ | ) | |
| **ILLINOIS MARINE TOWING, INC.,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No.  05-8318 |
| | ) | |
| **CASEY A. BARNICK,** | ) | |
| Defendant. | ) | |
| _____ | ) | |
| **BRYAN J. ALLEN, as Administrator of the** | ) | |
| **Estate of Eric M. Allen, Deceased,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No.  06-8081 |
| | ) | |
| **CASEY A. BARNICK,** | ) | |
| Defendant. | ) | |

**O P I N I O N**

The complaints at issue in each of the above-captioned adversary proceedings

contain an allegation that a claim resulting from the Defendant's operation of a motorboat

while intoxicated is excepted from discharge under Section 523(a)(9) of the Bankruptcy Code.  In each proceeding, the Defendant, Casey A. Barnick (DEBTOR), moved to dismiss those counts as failing to state a claim upon which relief can be granted.  At issue is whether the scope of the pre-BAPCPA version of Section 523(a)(9), targeting drunk drivers, is broad enough to ensnare drunk boaters.

## BACKGROUND

The following facts alleged in the complaints are assumed to be true for purposes of these motions.[1]  On May 21, 2004, a collision occurred between a barge that was being towed by the M/V Herman Crown, a vessel owned and operated by Illinois Marine Towing, Inc. (IMT), and a 17-foot pleasure boat operated by the DEBTOR.  As a result of the collision, three passengers in the DEBTOR'S boat were injured, and a fourth passenger, Eric M. Allen, died.  The DEBTOR subsequently pleaded guilty to and was convicted of "Aggravated Operating a Watercraft Under the Influence of Alcohol," a Class 2 felony, in connection with this collision.  The court sentenced the DEBTOR to a 180-day term of imprisonment, suspended his sentence and placed him on probation for 36 months.

In February 2005, IMT filed a complaint in the United States District Court for the Central District of Illinois seeking exoneration from or limitation of liability for any losses, damages or injuries arising from the collision.  *See* 46 U.S.C. § 181, *et seq.*  Bryan J. Allen, as Administrator of the Estate of Eric M. Allen, Deceased (ALLEN), filed an answer and asserted claims against IMT in the limitation proceeding.  ALLEN also filed a third party complaint in the limitation proceeding asserting claims against the DEBTOR and Billy Joe

---

[1]ALLEN has filed an Amended Complaint.  *See* note 3, *infra*.  IMT has not.

Thomas, the pilot of the IMT vessel, for wrongful death and survival under both maritime law and Illinois law.  IMT filed claims against the DEBTOR for indemnity and contribution in the limitation proceeding.[2]  In addition, ALLEN filed a state court action against IMT, Billy Joe Thomas and the DEBTOR.

The DEBTOR filed his petition for bankruptcy under Chapter 7 of the Bankruptcy Code on October 14, 2005.  In his schedules, the DEBTOR listed several claims relating to the boat accident as claims with "amount unknown."   ALLEN and IMT (sometimes together referred to as "PLAINTIFFS") filed these adversary proceedings seeking a determination that their claims against the DEBTOR arising from the boat accident are nondischargeable under Section 523(a)(9).  In each proceeding, the DEBTOR moved to dismiss the complaints for failing to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[3]  Hearings were held on the motions to dismiss, and the Court took the matters under advisement.

## LEGAL STANDARD

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6), the court must assume as true all well-pleaded facts in the complaint and view them in a light most favorable to the plaintiff, drawing all reasonable inferences in favor of the plaintiff.  *Veazey v. Communications & Cable of Chicago,*

---

[2] The question of whether a claim for indemnity or contribution is a "debt for death or personal injury" under Section 523(a)(9) was not raised.

[3] The procedural posture of ALLEN'S case calls for some explanation.  The DEBTOR actually filed his Motion to Dismiss in response to ALLEN'S original Complaint, in which ALLEN sought a determination of nondischargeability under Section 523(a)(9) only.  After the Motion to Dismiss had been taken under advisement by the Court, ALLEN moved for and was granted leave to file an Amended Complaint that added a new claim under Section 523(a)(6) for willful and malicious injury.  ALLEN retained his Section 523(a)(9) claim in substantially the same form.  This Opinion addresses only the Section 523(a)(9) claim.

*Inc.,* 194 F.3d 850, 853-54 (7th Cir. 1999). The purpose of such a motion is not to decide the merits of the case, but to test the sufficiency of the complaint. Dismissal is proper only if the court is convinced, beyond a reasonable doubt, that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Echevarria v. Chicago Title & Trust Co.,* 256 F.3d 623, 625 (7th Cir. 2001).

## ANALYSIS

Section 523(a)(9) of the Bankruptcy Code was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) to provide that debts for death or personal injury caused by the debtor's operation of a vessel and an aircraft, as well as a motor vehicle, are nondischargeable if the operation was unlawful because the debtor was intoxicated. That amendment, adding the categories of vessels and aircrafts, applies to all cases filed on or after October 17, 2006. Because the DEBTOR'S petition was filed just days before that effective date, the PLAINTIFFS' claims are governed by the prior version of the statute, which provided:

> (a) A discharge . . . does not discharge an individual debtor from any debt-
>
> * * *
>
> (9) for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance . . . .

11 U.S.C. § 523(a)(9).[4]

The term *motor vehicle* as used in former Section 523(a)(9) is not defined in the Bankruptcy Code. There is a split of authority among the courts that have addressed the

---

[4] Although ALLEN cited the current version of Section 523(a)(9) in his original complaint, he corrected the references to the pre-BAPCPA version in his amended complaint.

question of whether the term *motor vehicle* encompasses motorboats.  One line of cases, relied upon by the DEBTOR, holds that the term *motor vehicle* does not include motorboats or other watercraft.  *See Matter of Greenway*, 71 F.3d 1177, 1180 (5th Cir. 1996)*, cert. denied*, 517 U.S. 1244, 116 S.Ct. 2499, 135 L.Ed.2d 191 (1996); *In re Fall*, 192 B.R. 16, 21 (Bankr.D.N.H. 1995); *In re Dilk*, 2004 WL 3130617 (S.D.Ind. 2004).  The other line of cases, relied upon by ALLEN and IMT, concludes that the term *motor vehicle* has no universally accepted meaning and, given Congress's clear intent to protect the public from drunk drivers, holds that a motorboat is a *motor vehicle* for purpose of Section 523(a)(9).  *See In re Soda*, 261 B.R. 342, 349 (Bankr.D.Conn. 2001)*; Willison v. Race*, 192 B.R. 949, 954 (W.D. Mo. 1995); *Williams v. Radivoj*, 111 B.R. 361, 362 (S.D. Fla. 1989).

Under well-settled rules of statutory construction, courts must begin their analysis with the language of the statute itself.  *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).  Courts are to assume, absent indication to the contrary, that "Congress intends the words in its enactments to carry their ordinary, contemporary, common meaning."  *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 388, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993) (quoting *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979)).  Only if a term is ambiguous should the court look beyond the statutory language as written to determine Congress's intent.  *See Ron Pair*, 489 U.S. at 241.  Additionally, exceptions to discharge are narrowly construed against the creditor and liberally construed in favor of the debtor in light of the bankruptcy goal of affording the debtor a fresh start.  *Meyer v. Rigdon*, 36 F.3d 1375, 1385 (7th Cir. 1994).

5

The clarity or ambiguity of statutory language should be determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole. *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997). The context consists not merely of other sentences but also of the real-world situation to which the language pertains. *Matter of Handy Andy Home Improvement Centers, Inc.,* 144 F.3d 1125, 1128 (7th Cir. 1998). The "ordinary, contemporary, common" meaning of a word is best ascertained by reference to the dictionary definition.[5] The language of a statute is ambiguous if it is susceptible to more than one reasonable interpretation or more than one accepted meaning. *Carrieri v. Jobs.com Inc.,* 393 F.3d 508, 519 (5th Cir. 2004). The existence of alternative dictionary definitions of a word, each making some sense under the statute, itself indicates that the statute is open to interpretation. *National R.R. Passenger Corp. v. Boston and Maine Corp.,* 503 U.S. 407, 418, 112 S.Ct. 1394, 1402, 118 L.Ed.2d 52 (1992). The existence of divergent judicial opinions on the meaning of a term is also an indication that the term is susceptible of different, reasonable interpretations. *EDO Corp. v. Newark Ins. Co.,* 878 F.Supp. 366, 372 (D.Conn. 1995).

The DEBTOR, identifying *vehicle* as the operative term, argues that its definition is controlled by the federal Dictionary Act, which defines *vehicle* as follows:

> The word "vehicle" includes every description of carriage or other artificial contrivance used, or capable of being used, as a means of transportation on land.

---

[5] Definitions may differ among dictionaries, however, and federal courts use several different ones. In its recent opinions, the Supreme Court seems to favor WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY. *See, e.g., Hamdan v. Rumsfeld,* 126 S.Ct. 2749, 165 L.Ed.2d 723 (2006); *Howard Delivery Service, Inc. v. Zurich American Ins. Co.,* 126 S.Ct. 2105, 165 L.Ed.2d 110 (2006). Recent reference has also been made to the OXFORD ENGLISH DICTIONARY in *Burlington Northern and Santa Fe Ry. Co. v. White,* 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006); THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE in *Arthur Anderson LLP v. United States,* 544 U.S. 696, 125 S.Ct. 2129, 161 L.Ed.2d 1008 (2005); RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE in *Small v. United States,* 544 U.S. 385, 125 S.Ct. 1752, 161 L.Ed.2d 651 (2005); and WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY in *Scarborough v. Principi,* 541 U.S. 401, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004).

1 U.S.C. § 4. The DEBTOR contends that application of the Dictionary Act renders Section

523(a)(9) unambiguously limited to motor vehicles used for land transportation, thereby

excluding motorboats from its scope.

ALLEN and IMT, relying on a dictionary definition of *vehicle* and *motor* as separate

words, argue that a motorboat "easily qualifies" as a motor vehicle.[6] They also contend

that the BAPCPA amendment to Section 523(a)(9) clarified that the provision was always

intended to apply to the operation of a motorboat while illegally impaired. They also

argue that permitting drunk boaters to discharge their liability would constitute an "absurd

result" that must be avoided.

**1.    The term *motor vehicle* is ambiguous.**

The Court will first address whether the statute is ambiguous or has a single, plain

meaning. The initial task is to identify the term in question. None of the parties consider

the possibility that *motor vehicle* is a compound term that has a different meaning than the

combination of the meanings of its component words.

In English grammar, a compound is a single expression made up of more than one

word and acting as a single word. C. Edward Good, A GRAMMAR BOOK FOR YOU AND I...

OOPS, ME! 397 (Capital Books, Inc. 2002). A compound that acts as a noun is usually

comprised of two nouns and may be closed (*e.g.*, headache), open (*e.g.*, attorney general),

or hyphenated (*e.g.*, president-elect). *Motor vehicle* is an example of an open compound.

Open compounds are subject to an inherent ambiguity as to whether the author intended

---

[6]The PLAINTIFFS cite WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY OF THE ENGLISH LANGUAGE as defining *vehicle* to mean "any means in or by which someone travels or something is carried or conveyed; a means of conveyance or transport," and *motor* to mean "a comparatively small and powerful engine, esp. an internal combustion engine in an automobile, motorboat, or the like."

to use the compound form or the two words separately.  Definitionally, it often makes no difference.   In the case at bar, however, the difference is significant and potentially dispositive.

*Vehicle* is broadly defined as a means of carrying or transporting something; a conveyance.[7]  WEBSTER'S includes usage examples where the word is used to describe a submarine and a kayak.  *Motor*, as a noun, is defined as something that produces or imparts motion such as an engine; as an adjective, it means equipped with or driven by an engine. Thus, under the dictionary definitions of the separate words *motor* and *vehicle*, meaning a conveyance driven by an engine, a motorboat is definitely included.

The dictionaries also contain separate definitions for the open compound *motor vehicle*, as follows:

> – a road vehicle powered by an engine (usually an internal-combustion engine). OED.

> – a self-propelled wheeled conveyance, such as a car or truck, that does not run on rails.  AMERICAN HERITAGE.

> – an automotive vehicle not operated on rails; esp: one with rubber tires for use on highways.  WEBSTER'S.

A motorboat does not fit within the definitions for the open compound contained in the OED and AMERICAN HERITAGE.  Without tires and not designed for road use, neither does it fit within the usage note in WEBSTER'S.

However, is it within WEBSTER'S general definition of *motor vehicle* as an automotive vehicle not operated on rails?  As shown above, the definition of *vehicle* is broad enough

---

[7]WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1976) ("WEBSTER'S"); THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE: FOURTH EDITION (2000) ("AMERICAN HERITAGE"); OXFORD ENGLISH DICTIONARY (SECOND EDITION, 1989) ("OED").

to include a boat.  WEBSTER'S defines *automotive* as follows:

a.    Containing within itself the means of propulsion: self-propelling.
b.    Of, relating to, or concerned with vehicles or machines that propel themselves (as automobiles, trucks, airplanes, motorboats).

Thus, in WEBSTER'S, an *automotive vehicle*, meaning a self-propelled conveyance, includes a motorboat; and, since a motorboat is not operated on rails, WEBSTER'S definition of the open compound *motor vehicle* includes a motorboat.[8]

The DEBTOR'S reliance on the Dictionary Act definition of *vehicle* is misplaced. Where an open compound has become so commonly used that it has its own dictionary definition, independent of the definitions of the individual words that comprise the compound, the definitions of the individual words are immaterial.  The Dictionary Act definition of *vehicle* has no bearing on how *motor vehicle* is defined as a compound.[9]

Based on the foregoing, there are two sources of ambiguity.  First, is the uncertainty whether the words *motor* and *vehicle*, as used in Section 522(a)(9), were intended to be used as an open compound.[10]  This uncertainty is inherent in the nature of open compounds consisting of two whole words and is not resolved by a textual analysis.  Either possibility is plausible.[11]  This question is significant here, where the compound is usually defined more narrowly than its component words are separately defined.

---

[8]The usage note declares that the term *motor vehicle* is used especially when referring to a vehicle with rubber tires for use on highways.  Because that usage is especial, it is not exclusive.

[9]A compound's meaning sometimes develops over time as a matter of custom; as such, it is subject to the blurring effects of colloquialism and regional idiosyncrasies.  *See* Kenneth G. Wilson, THE COLUMBIA GUIDE TO STANDARD AMERICAN ENGLISH (1993).

[10]The word *motor*, most commonly used as a noun, is also an adjective, meaning equipped with or driven by a motor.  The possibility that Congress used the words separately, *motor* as an adjective modifying the noun *vehicle*, cannot be ruled out textually.

[11]This Court believes it likely that Congress used the consecutive words *motor vehicle* as the open compound form.  That belief, however, is nothing more than conjecture.

The second source of ambiguity is the discrepancy among the dictionary definitions of the compound *motor vehicle*. If Congress intended to use the open compound term, a motorboat is excluded by the OED and AMERICAN HERITAGE definitions, but included in the WEBSTER'S definition. In determining whether an ambiguity exists, it is not for a court to choose its preferred definition from among conflicting dictionaries.[12] The very existence of the conflict is a strong indication of ambiguity. As well, the divergence of opinion in the case law is a further indication of ambiguity.

In this Court's opinion, *motor vehicle* as used in Section 523(a)(9) is ambiguous because it is susceptible of two different definitions, one which includes and one which excludes a motorboat. The ambiguity is not resolved by reference to how the term is used in Section 523(a)(9), which contains no indication that Congress was intentionally including or excluding motorboats from the scope of the provision. Either interpretation is plausible.

**2.      Context does not resolve the ambiguity.**

Next must be asked whether any interpretational clues may be gleaned from either Section 523 in its entirety or the Bankruptcy Code as a whole. Several of the grounds for nondischargeability set forth in Section 523(a) are designed to implement a particular social policy or enforce a particular community standard of conduct and, as such, are discrete and insular exceptions to the general rule that prepetition debts are dischargeable. The purpose of Section 523(a)(9) is to deter drunk driving, protect victims of drunk driving, and ensure that those who cause injury by driving drunk may not escape civil liability through bankruptcy. *In re Hudson,* 859 F.2d 1418, 1423 (9th Cir. 1988). This policy is at work

---

[12]There is no question here that WEBSTER'S, OED and AMERICAN HERITAGE are all respected, mainstream dictionaries regularly relied upon by courts, including the Supreme Court.

nowhere else in the Bankruptcy Code other than Section 523(a)(9), which stands alone as a provision with a unique subject, unrelated to any other provision in Section 523 or in the Code as a whole. Thus, there is nothing in the broader context of the statute that sheds light on the question of interpretation.[13]

Although *motor, vehicle* and *motor vehicle* are all undefined by the Bankruptcy Code, *motor vehicle* does appear in two other places in the Code, including Section 522(d)(2), which provides an exemption for the debtor's interest, to a limited extent, "in one motor vehicle." No definition accompanies its use there, the context is neutral as to whether a motorboat is included and no reported case has dealt with the issue. Moreover, the purpose of exemption statutes is to ensure that debtors will not be left destitute, but will emerge from bankruptcy with the basic necessities of life to enable them to start afresh. *In re Lynch,* 321 B.R. 114, 116 (Bankr.S.D.N.Y. 2005); *see also* H.R. Rep. No. 595, 95th Cong. 1st. Sess. 361 (1977). The exemption statute has nothing in common with Section 523(a)(9).

In addition, BAPCPA added a third usage of the term *motor vehicle*, in the so-called hanging paragraph at Section 1325(a) which prohibits stripdowns of claims secured by certain collateral. The provision defines *motor vehicle* by incorporating by reference the definition found at 49 U.S.C. § 30102(a)(6) which provides that *motor vehicle* "means a vehicle driven or drawn by mechanical power and manufactured primarily for use on public streets, roads, and highways, but does not include a vehicle operated only on a rail line." The incorporated definition applies only to the term as used in Section 1325(a). No similar definitional reference was added by BAPCPA to Sections 523(a)(9) or 522(d)(2). In

---

[13]Although it might be said from a real-world viewpoint that drunk driving on the nation's roadways is a far more serious problem than drunk boating, both today and in 1984 when Section 523(a)(9) was enacted, it cannot be said that drunk boating is or was an insignificant problem or one not worthy of some effort toward remediation. The possibility that Congress might have intended to address both problems at once is certainly plausible from a real-world viewpoint.

this Court's view, the amendment to Section 1325(a) made by BAPCPA is not significant. However, the need perceived by Congress to define the term *motor vehicle* in Section 1325(a) at least reflects an awareness of the term's ambiguity.

Other federal statutes that contain the term *motor vehicle* have little or nothing in common with Section 523(a)(9). Relying on the presumption that Congress uses the same term consistently in different statutes, some courts have relied on other statutes. In this Court's view, however, that presumption must be applied with caution and is most appropriate only where the two statutes have similar purposes. *See Smith v. City of Jackson, Miss.,* 544 U.S. 228, 233, 125 S.Ct. 1536, 1541, 161 L.Ed.2d 410 (2005).

An exception may be the definition of *motor vehicle* in Chapter 4 of Title 23, which governs highway safety. 23 U.S.C. § 401 *et seq.* Section 405(f)(2) defines the term *motor vehicle* to mean "a vehicle driven or drawn by mechanical power and manufactured primarily for use on public streets, roads, and highways, but does not include a vehicle operated only on a rail line." 23 U.S.C. § 405(f)(2). Section 410, governing alcohol-impaired driving countermeasures, incorporates that definition. Although the subject matter of Section 410 is similar to Section 523(a)(9), its scope, limited to safety standards for highways, is necessarily more restrictive, and in this Court's view, cannot be determinative here.

**3.     Legislative History is inconclusive.**

Having determined that *motor vehicle* is ambiguous, and that the ambiguity is not resolved by a contextual analysis, the next step is to review the legislative history, a task previously undertaken by several courts. To put the history in context, however, a brief

review of the changes to the statutory language that occurred over time is necessary. When the Bankruptcy Amendments and Federal Judgeship Act of 1984 added new paragraph 9 to Section 523(a), covering debts incurred from operating a motor vehicle while legally intoxicated, its effect was expressly limited to debts arising from a judgment or consent decree.[14] Shortly thereafter, litigation ensued over whether the judgment or consent decree had to be entered prebankruptcy. *See In re Ganzer,* 54 B.R. 75 (Bankr.D.Minn. 1985). The question was also raised as to why a judgment or consent decree was necessary at all.

The Criminal Victims Protection Act of 1990 deleted the requirement for the debt to arise from a judgment or consent decree and clarified the type of debt excepted from discharge to mean a debt "for death or personal injury."[15] The reference to *motor vehicle* remained unaltered.

Section 523(a)(9) was recently amended again by BAPCPA to specify that the scope of the provision includes incidents where the intoxicated debtor was operating a vessel or an aircraft.[16] As indicated earlier, since the DEBTOR'S case was filed pre-BAPCPA, the newly amended provision does not apply.

---

[14]The provision excepted from discharge any debt –

To any entity, to the extent that such debt arises from a judgment or consent decree entered in a court of record against the debtor wherein liability was incurred by such debtor as a result of the debtor's operation of a motor vehicle while legally intoxicated under the laws or regulations of any jurisdiction within the United States or its territories wherein such motor vehicle was operated and within which such liability was incurred.

11 U.S.C. § 523(a)(9) (1985).

[15]As amended, the provision excepted from discharge any debt –

for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance.

11 U.S.C. § 523(a)(9) (1991).

[16]The amended provision now provides for nondischargeability for any debt –

for death or personal injury caused by the debtor's operation of a motor vehicle, vessel, or aircraft if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance.

11 U.S.C. § 523(a)(9) (2006).

It has been noted that the legislative history for the addition of Section 523(a)(9) by BAFJA is sparse. *Ganzer,* 54 B.R. at 76; *Williams v. Radivoj,* 111 B.R. 361, 362 (S.D.Fla. 1989). The 9th Circuit conducted a comprehensive review of that legislative history in *Hudson,* 859 F.2d at 1421-23. Addressing whether a claim against a drunk driver need be reduced to judgment before bankruptcy in order to be nondischargeable, the court began its review by characterizing a bill introduced by Senator Danforth as the "origin of what was to become § 523(a)(9)." *Hudson,* 859 F.2d at 1421. Senator Danforth explained that the purpose of the bill was to close a loophole that allowed drunk drivers in some states to discharge such judgments where the state did not define drunk driving as wilful so as to fall within the ambit of Section 523(a)(6). *Id.* (citing 129 Cong. Rec. S1622 (daily ed. Feb. 24, 1983)). The language that ultimately became Section 523(a)(9), however, was proposed by Senators Dole and Thurmond as a modification to the Danforth bill. *Id.* at 1422.

As pointed out in *Hudson,* the recorded comments of members of Congress, as well as a Senate Judiciary Committee Report, show that Congress intended, in enacting Section 523(a)(9), to create a special category of nondischargeability for drunk driving claims, thereby removing them from the more general provision of Section 523(a)(6) and eliminating the necessity to prove wilfulness. Nothing in the legislative history indicates that Congress considered any alternatives to the term *motor vehicle* or gave any thought at all to the question of its meaning. In the absence of any reference to the issue in the legislative history, it must be concluded that Congress, in enacting Section 523(a)(9), had no discernable intent to include or exclude motorboats – it simply never came up.

In response to the DEBTOR'S Motions to Dismiss, ALLEN and IMT argue that BAPCPA'S amendment to Section 523(a)(9) to specifically include debts for personal injury

14

or death caused by the debtor's operation of a "vessel," was merely a "clarification" of the language that confirms Congress's original intent that motorboats were always included within the coverage of Section 523(a)(9).  In support of that position, they rely heavily on the statement contained in the Technical Amendments in House Report 109-31, Part 1, that, "Congress *previously* made the policy judgment that the equities of persons injured by drunk drivers outweigh the responsible debtor's interest in a fresh start, and here *clarifies* that the policy against drunk driving applies not only on land, but also on the water and in the air." H.R. REP. NO. 109-31, Pt. 1, at 142-43 (2005), *as reprinted in* 2005 U.S.C.C.A.N 88, 201 (emphasis added).

The Court does not find this argument persuasive.  First, a Congress in 2005 is not in a position to clarify what a 1984 Congress meant.    It has long been recognized by the Supreme Court that the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one. *South Dakota v. Yankton Sioux Tribe,* 522 U.S. 329, 355, 118 S.Ct. 789, 803, 139 L.Ed.2d 773 (1998). *Cf., Loving v. United States,* 517 U.S. 748, 770, 116 S.Ct.  1737, 1749, 135 L.Ed.2d 36 (1996) (legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction).

This is particularly true where enough time has passed between enactments so that the membership of Congress has substantially turned over. *See Paramount Health Systems, Inc.  v. Wright,* 138 F.3d 706, 710 (7th Cir. 1998) (during 11 years between statutes, membership of Congress had "largely turned over").  Moreover, "Congress is not an interpretive body and has no felt duty to maintain continuity with the past." *Id.*  The duty to interpret statutes rests exclusively with the judiciary. *Bankers Trust New York Corp. v.*

15

*United States,* 225 F.3d 1368, 1376 (Fed.Cir. 2000) (citing *Marbury v. Madison,* 1 Cranch 137,

5 U.S. 137, 176, 2 L.Ed. 60 (1803)).

Second, the statement upon which PLAINTIFFS base their argument is taken out of

context.  Immediately before the statement that PLAINTIFFS are relying upon, the House

Report states that, "[n]either additional term ["watercraft"[17] or "aircraft"] should be

defined or included as a "motor vehicle" in section 523(a)(9) . . . ." Moreover, the sentence

immediately after the statement cited by PLAINTIFFS provides:

> Viewed from a practical standpoint, this provision closes a loophole that
> gives intoxicated watercraft and aircraft operators preferred treatment over
> intoxicated motor vehicle drivers and denies victims of alcohol and drug
> related boat and plane accidents the same rights accorded to automobile
> accident victims under current law.

H.R. REP. 109-31 at 143, 2005 U.S.C.C.A.N at 201-02.  This language directly undercuts

PLAINTIFFS' argument by expressly acknowledging that Section 523(a)(9) as previously

written, had created a loophole that exempted intoxicated watercraft and aircraft operators.

The PLAINTIFFS also rely upon a snippet of legislative history to the 1990

amendment.  They cite *In re Dunn,* 203 B.R. 414 (E.D.Mich. 1996), where the issue was

whether a snowmobile was a *motor vehicle* within the scope of Section 523(a)(9).  After

finding the term ambiguous, the court reviewed the House Report to the 1990 amendatory

act and stated as follows:

> The report indicates that the purpose of the amendment of § 523(a)(9)
> was to ensure that "the drunk driving provision will cover **all forms of
> driving** while intoxicated . . . ."  H.R.Rep. No. 101-647, at 163-165 (1990),
> *reprinted in* 1990 U.S.C.C.A.N. 6472, at 6569-71 (emphasis added).

---

[17] The term "watercraft" was subsequently changed to "vessel" in the final version of BAPCPA.

*Id.* at 417.  The court concluded as follows:

> Because Congress clearly intended to protect victims of drunk driving when it enacted and amended § 523(a)(9) of the Code, the Court is satisfied that a reasonable construction of the term "motor vehicle" under this section includes a snowmobile.

*Id.*  The PLAINTIFFS seize upon the district court's use of the emphasized phrase *all forms of driving* as support for its holding that a snowmobile is a *motor vehicle*, and seek to further expand the use of that phrase to justify the conclusion that motorboats are also included.

PLAINTIFFS' argument is faulty.  First, the history to the 1990 Act, as a tool to aid the interpretation of the 1984 law, suffers from the same infirmities as the history to BAPCPA.  Second, the phrase *all forms of driving* is itself ambiguous as to its meaning.  Third, the purpose behind the 1990 amendment was to eliminate the requirement for a judgment or consent decree, and made no change to the description of the operative instrumentality *motor vehicle*.  In that context, the House Report's statement that the purpose of the amendment was to ensure that "the drunk driving provision will cover all forms of driving while intoxicated" appears to be a *non sequitur*.  The Supreme Court has observed on more than one occasion that the interpretation given by one Congress (or a committee or member thereof) to an earlier statute is of little assistance in discerning the meaning of that statute.  *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 185-86, 114 S.Ct. 1439, 1452, 128 L.Ed.2d 119 (1994).  This Court places no weight on the history to the 1990 Act relied upon by PLAINTIFFS.  The Court also rejects the suggestion that the history to BAPCPA, enacted twenty-one years after BAFJA, may be used as a valid basis for interpreting the 1984 provision.

**4.      The case law confirms the existence of an unresolved ambiguity.**

The courts that have interpreted the term *motor vehicle* have differed as to whether it is ambiguous.  The bankruptcy court in *In re Williams,* 101 B.R. 356 (Bankr.S.D.Fla. 1989), held that a motorboat is a *motor vehicle* within the meaning of Section 523(a)(9).  The court's conclusion that the intent of Congress was to protect the public from drunken drivers without distinction between an automobile, airplane or boat is entirely unsupported by any reference to legislative history or other meaningful analysis.  That decision was affirmed by the district court in *Radivoj,* 111 B.R. at 363.  Noting that the term *motor vehicle* "has no universally accepted meaning," and that by amending the statute "Congress intended to give effect to a national policy against drunk driving," the district court concluded that "Congress was concerned with the consequences of drunk driving, and not the means." *Id.* at 362-63.  No support is cited for that conclusion.

The bankruptcy court in *In re Race,* 159 B.R. 857, 860 (Bankr.W.D.Mo. 1993), held that a motorboat is not a motor vehicle under the statute.  The court identified a conflict between the dictionary definitions of *motor vehicle* and the separate words *motor* and *vehicle*. The court rejected the broader definition that includes motorboat as inconsistent with the "natural reading of the term 'motor vehicle' because (1) discharge exceptions must be narrowly construed and (2) the normal connotation encompasses only vehicles designed for use on the highways."  *Id.* at 860.  The court concluded that the statute's meaning was plain and referred only to vehicles designed for use on the highways.  *Id.*

This Court disagrees with the bankruptcy court's analysis in *Race* for three reasons. First, the contrary dictionary definitions, by themselves, are sufficient to not only permit,

18

but require, a finding of ambiguity.  Second, it is not the court's province to accept one

dictionary definition as "the natural reading" or the "normal connotation" and reject the

other, in the absence of a textual basis.  Third, the canon of construction that discharge

exceptions are narrowly construed comes into play only after an ambiguity has been found;

it should not be used to justify a finding that no ambiguity exists in the first place.

In *dicta*, the bankruptcy court in *Race* suggests that, because the legislative history

only exhibits concerns about drunken driving on highways and makes no mention of boats,

that this supports limiting the statute's application to road vehicles.  For the reasons stated

earlier, this Court does not believe that silence in the face of ambiguity can be taken to

mean anything.  Silence is, itself, inherently ambiguous.  *See Branche v. Airtran Airways, Inc.,*

342 F.3d 1248, 1263 (11th Cir. 2003), *cert. denied,* 540 U.S. 1182, 124 S.Ct. 1422, 158 L.Ed.2d

86 (2004).

The bankruptcy court's decision in *Race* was reversed in *Willison v. Race,* 192 B.R. 949

(W.D.Mo. 1995).  The district court first rejected the debtor's argument that the definition

of *motor vehicle* in other statutes, such as the National Traffic and Motor Vehicle Safety Act

of 1966, 15 U.S.C. §§ 1391(3) and 1901(15)(1992), should be imported into the Bankruptcy

Code, reasoning that the absence of any common purpose between the statutes precludes

such an argument.  *Id.* at 952.  Next, the court contrasted the dictionary definition of *motor*

*vehicle* with the definitions of the separate words *motor* and *vehicle*, finding motorboat to

fit within one but not the other, and determining that the statute did not have a single plain

meaning but was ambiguous.  *Id.* at 952-53.

19

The district court then turned to the purpose of § 523(a)(9) as an aid to construction. Recognizing the purpose of protecting the victims of drunk drivers even at the expense of the debtor's right to a fresh start, the court concluded that "[c]learly, the provision was enacted to protect the victims of irresponsible persons who get drunk and injure others. Congress could not have intended for the drunk boater's victim to suffer while the drunk boater floats away with a 'fresh start.'" *Id.* at 954.

This Court agrees with the district court's analysis until the last step. No matter how egalitarian the sentiment that the victims of drunk boaters should be protected to the same extent as the victims of drunk drivers, there is simply no evidence of such a Congressional intent. Respectfully, this Court is of the view that attributing that intent to Congress, here, is nothing more than a result-oriented approach. There is little doubt that Congress would have included drunk boating as well, had the issue been raised. (It is now expressly included through the BAPCPA amendments). But the question is not "What would Congress have done had they considered this issue?" The question is "What was Congress's actual intent when it passed the law?" As indicated earlier, there is no evidence that Congress ever considered the issue or had any actual intent to include or exclude motorboats.[18]

Subsequent decisions add little to the analysis. In *In re Fall,* 192 B.R. 16 (Bankr.D.N.H. 1995), the court followed the bankruptcy court's decision in *Race* to hold that

---

[18]In some circumstances, it may be necessary for a court, in order to decide a matter, to predict what Congress would have done and decide the case that way. That exercise is unnecessary here, where the interpretation of an unresolvable ambiguity is governed by application of the canon of construction mandating that nondischargeability provisions are to be narrowly construed.

20

*motor vehicle* does not include motorboat. The *Fall* court fails to acknowledge the fact that the bankruptcy court in *Race* had been reversed more than three months before the *Fall* court issued its opinion.

In *Matter of Greenway,* 71 F.3d 1177 (5th Cir. 1996), the only court of appeals opinion on the subject, the court held that a motorboat is not a *motor vehicle* under Section 523(a)(9), reversing the district court. In its two-paragraph analysis, the circuit court relied on two dictionary definitions of *motor vehicle* and the definition of *motor vehicle* in certain federal statutes other than the Bankruptcy Code, to support its conclusion that the statute plainly and unambiguously does not include motorboats.

In *In re Soda,* 261 B.R. 342 (Bankr.D.Conn. 2001), the court followed the district court's decision in *Willison v. Race* to hold that a motorboat is a *motor vehicle.* Finally, in *In re Dilk,* 2004 WL 3130617 (S.D.Ind. 2004), the district court reversed the bankruptcy court and held that Section 523(a)(9) does not apply to motorboats, relying, principally, upon the Dictionary Act definition of *vehicle* and the way that *motor vehicle* is defined in other federal statutes.

**5.    Ambiguities must be resolved in favor of debtors.**

Having determined that the statutory language is ambiguous and that the ambiguity is not resolved by reference to context or legislative history, the question is "What next?" With nowhere else to look for assistance in discerning the intent of Congress, the Court is left to play the final card in its hand: the canon of construction that exceptions to discharge are to be construed strictly against the creditor and liberally in the debtor's favor. *In re*

*Kontrick,* 295 F.3d 724, 736 (7th Cir. 2002).  More generally, ambiguities in the Bankruptcy Code must be resolved in favor of the debtor.  *New Neighborhoods, Inc. v. West Virginia Workers' Compensation Fund,* 886 F.2d 714, 719 (4th Cir. 1989); *In re Payne,* 27 B.R. 809, 817 (Bankr.D.Kan. 1983).  Resolving the ambiguity in favor of the DEBTOR leads to the conclusion that the ambiguous term *motor vehicle* must be construed narrowly to exclude motorboats from its meaning.

In reaching this conclusion, the Court also rejects PLAINTIFFS' final argument that declining to read the term *motor vehicle* to include watercraft, would lead to the absurd result that drunk drivers of boats could escape liability for their actions, while drunk drivers of automobiles or trucks could not.  As acknowledged by the district court in *Dilk,* however, while this result might seem unfair, an "unfair" result does not equal an "absurd" result.  *See Dilk*, 2004 W.L. 3130617 at *4.  Whether intoxicated boat operators are treated the same as drunk drivers is a public policy issue that is up to Congress to decide.  That decision is clearly reflected in the BAPCPA amendments.  It is not appropriate to characterize its prior absence as absurd where the question has no impact on any other aspect of the bankruptcy system.

If sympathy for the family of Eric M. Allen governed this decision, a determination of nondischargeability would be entered.  The contrary result is reached, however, not because it reflects the best policy, but because recognized principles of statutory interpretation, which the Court is duty-bound to follow, compel it.

The DEBTOR'S Motion to Dismiss IMT'S Complaint shall be granted.  The DEBTOR'S Motion to Dismiss ALLEN'S claim of nondischargeability under Section

523(a)(9) shall be granted.  The Section 523(a)(6) claim asserted by ALLEN in the Amended

Complaint remains pending before the Court.   This Opinion constitutes this Court's

findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy

Procedure 7052.  Separate Orders will be entered.

###